# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

J.S., K.S., C.S., and J.S., Minors via
Guardian and Parent SCOTT SELMER,

      Plaintiff,

  v.

SAINT PAUL ACADEMY AND SUMMIT
SCHOOL, BRYN ROBERTS, CHARLES
ZELLE, JILL ROMANS, CYNTHIA
RICHTER, TIMOTHY ELCHERT, ANNE
FIEDLER, JUDY JOHNSON, DAVE
THOMFORD, THOMAS HERBERT, and
PAUL APPLEBAUM,

      Defendants.

**MEMORANDUM OF LAW & ORDER**
Civil No. 11-1537 (MJD/TNL)

---

Scott Selmer, Conner McAlister Selmer, LLC, Counsel for Plaintiffs.

Ann Huntrods and Michael C. Wilhelm, Briggs & Morgan, P.A., Counsel for Defendants.

---

**I.   Introduction**

     This matter is before the court on Defendants' Motion to Dismiss [Docket No. 18]. Oral argument was scheduled for April 6, 2012, but Plaintiff Scott Selmer did not file a brief in opposition to the motion. Pursuant to Local Rule

7.1(e), the Court will strike the April 6 hearing from the calendar and consider the matter submitted without oral argument. For the following reasons, the Court will grant Defendants' motion.

## II. Background

The issues in this case arise from a January 3, 2006 incident at St. Paul Academy and Summit School ("SPA"). (Compl. at 4.) On that date, a physical altercation took place between Selmer and Defendant Paul Applebaum, both attorneys, during an elementary school basketball game. (Id.) Selmer and Applebaum dispute which one of them started the fight. Selmer claims that Applebaum was assaulting Selmer's thirteen-year-old son and that their fight began when Selmer went to his son's aid. (Id.) Applebaum, on the other hand, claims that Selmer struck him "without provocation," when Applebaum was not looking. (Wilhelm Aff., Ex. 1.)

It is not disputed that Selmer was arrested and pled guilty to fifth degree assault and that on February 17, 2006, Applebaum successfully sought a Harassment Restraining Order ("HRO") against Selmer. (Id., Exs. 1, 3.) In addition to barring Selmer from having contact with Applebaum and his children, the HRO also excluded Selmer from SPA. With the exception of a later

modification that permitted Selmer to attend his daughter's graduation on June 4, 2007, the HRO remained in effect until February 17, 2008.  (Id., Ex. 4 and Ex. 1.)

Selmer alleges that SPA placed additional restrictions on his contact with the school that went beyond the HRO.  For instance, Selmer alleges that SPA officials banned him from SPA grounds, in response to the January 3, 2007 incident but before the issuance of the HRO. (Compl. at 5.)  He alleges that SPA officials did so without first conducting an investigation into the incident, as required by the SPA handbook.  (Id.)  As a consequence of this ban, Selmer states that he was not permitted to attend his youngest son's graduation from lower school to middle school on May 29, 2008.

Selmer further alleges that on August 17, 2007, the SPA head of school also prohibited him from attending SPA off-campus events, including those taking place at other schools.  (Id. at 7.)  He also alleges that the head of school prohibited Selmer from using the public alley where he typically dropped off his eleven-year-old son at school.  (Id. at 11.)  SPA apparently extended this prohibition to preclude Selmer from using a public street, which, Selmer claims, forced him "to drop his eleven year old son of[f] in the middle of the street."  (Id.

at 12.) Selmer claims that this prohibition breached SPA policies and caused his daughter distress. (Id.)

Selmer also alleges that the school took actions against his children that violated his agreements with SPA. He claims that SPA officials told him in a meeting on April 2007 that they were expelling his son, even though they had assured him that the meeting would not concern his son's continued enrollment at the school. (Id. at 8.) He claims this assurance was important because it induced him to attend the meeting without his son's psychologist. (Id.) He also alleges that his son's English teacher singled him out and discriminated against him "in order to facilitate [the child's] expulsion." (Id. at 12.) Selmer further claims that, after his son was expelled, the school reduced its financial aid award to his family, accelerated his automatic tuition withdrawals, and improperly debited his bank accounts for multiple months' tuition at once. (Id. at 11.) Selmer suggests that SPA did this with knowledge that he was financially challenged, in order to trigger a default on his tuition payment and thus provide the school with pretext to expel his children. (Id.) Finally, Selmer alleges that SPA blocked his daughter's placement in honors classes, despite the fact that she met the required qualifications. (Id. at 14.) He claims that the school went so far

as to pressure her math teacher to artificially lower her grade, presumably to provide the school with justification for preventing her placement.  Id.

Selmer, who is an African American, alleges that SPA's treatment of him and his children was motivated by racial discrimination because SPA treated "similarly situated" Caucasian parents differently.  Although he weaves this allegation through his complaint, he presents only two specific allegations of disparate treatment:  First, Selmer alleges that SPA imposed none of the restrictions on Applebaum that it imposed on him.  (Id. at 5.)  The implication is that SPA declined to do so because Applebaum is not an African American.  Second, Selmer references "a Caucasian parent [who] was criminally convicted of battery of a much more egregious nature than was the allegation against Selmer," but against whom "no sanctions were imposed . . . by the SPA administration."  (Id. at 14.)  Selmer provides no additional information regarding this other case, apart from the fact that it occurred sometime "[i]n SPA's history."  (Id.)

Defendants have moved to dismiss Selmer's claims that they violated his equal protection rights and those of his children, arguing that he has failed to

allege facts sufficient to state plausible claims for relief. Selmer did not file an opposition to SPA's motion.

## III. Discussion

### A. Standard

A party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss, the Court considers the complaint, materials embraced by the complaint, exhibits attached to the complaint, and matters of public record. See Katun Corp. v. Clarke, 484 F.3d 972, 975 (8th Cir. 2007). The Court takes all facts alleged in the complaint to be true. Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Although civil-rights pleadings are construed liberally, "[s]uch pleadings must nonetheless not be conclusory." Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). The factual matter alleged must be sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009). Moreover, allegations of discrimination may not be accepted as a plausible explanation for disparate treatment where there is an "obvious alternative explanation." Id. at 1951-52.

### B. Selmer's § 1983 Claims

Selmer asserts a claim under 42 U.S.C. § 1983, alleging that SPA discriminated against him and his children on the basis of their race in violation of their constitutional rights. (Compl. at 4, 15.) To succeed in his § 1983 claim, Selmer must show that SPA took actions under color of state law that resulted in "a deprivation of rights secured by the Constitution or federal law." Lindstedt v. Mo. Libertarian Party, 160 F.3d 1197, 1198 (8th Cir. 1998) (per curiam).

Since § 1983 applies only to state actors, Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 855 (8th Cir. 2001), Selmer's claims can succeed only if SPA acted under color of state law. Selmer acknowledges that SPA is a private school, albeit one that receives "thousands of dollars" in book grants from the State of Minnesota. The implication is that SPA should be treated as a state actor because it receives state funding. A private school is not a state actor, however, even if "virtually all of [its] income [is] derived from government funding." Rendell-Baker v. Kohn, 457 U.S. 830, 840 (1982) (holding that a private school's

receipt of public funds does not make its discharge decisions acts of the State). Even if Selmer's allegation that SPA receives thousands of dollars from the state is accepted as true, that fact alone does not indicate that SPA was acting under color of state law or otherwise make SPA a state actor. Selmer's § 1983 claim must therefore be dismissed.

    **C.**    **Selmer's § 1981 Claims**

Unlike § 1983, 42 U.S.C. § 1981 protects persons "against impairment by nongovernmental discrimination," in addition to "impairment under color of State law." 42 U.S.C. § 1981(c). In so doing, it "protect[s] citizens' right to make and enforce contracts . . . without any impairment due to private or public racial discrimination." Daniels v. Dillard's, Inc., 373 F.3d 885, 887 (8th Cir. 2004). Accordingly, to prevail on a § 1981 claim, Selmer need not show that SPA is a state actor. Nevertheless, to sustain a claim under § 1981, Selmer must still allege sufficient facts to show: "(1) membership in a protected class; (2) the intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a protected activity (i.e., the making and enforcement of contracts)." Id. Selmer asserts facts that may be sufficient to show that he and his children are members of a protected class and that SPA

may have interfered with his contract rights, but he fails to state facts from which it could be reasonably inferred that it did so because of his or his children's race.

Throughout his complaint, Selmer states that he and his children were treated differently than "similarly situated Caucasian" children and parents, but he does not provide support for these assertions. (See Compl. at 8, 11, 12, 15.) Selmer comes close to pleading facts indicating racial discrimination in only two instances. First, Selmer seems to suggest that SPA placed restrictions on him but not on Applebaum because Selmer is African-American and Applebaum is not. (Id. at 5-6.) But he fails to allege any additional facts supporting the allegation that SPA's actions were racially motivated. Moreover, he fails to address the "obvious alternative explanation," for SPA's decision to impose restrictions on him but not Applebaum: Selmer pled guilty to assaulting Applebaum. See Iqbal, 129 S. Ct. at 1951-52.

Selmer also alleges that there was once "[i]n SPA's history a Caucasian parent" who was convicted of a "much more egregious" battery than the one to which Selmer pled guilty but that SPA did not sanction that parent. (Compl. at 14.) Here again, Selmer has not pled sufficient facts about the alleged person or incident. Indeed, Selmer fails to allege that the difference in treatment was due

to racial discrimination, and so this allegation does not rise even to the level of a "legal conclusion." Because Selmer's complaint fails to plead sufficient facts to support his claim for relief under § 1981, that claim must also be dismissed.

Accordingly, based on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant SPA's Motion to Dismiss [Docket No. 18] is **GRANTED** and Plaintiffs' complaint is **DISMISSED** with prejudice. The hearing currently scheduled for April 6, 2012 is stricken from the calendar.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   February 22, 2012                    s/ Michael J. Davis
                                              Michael J. Davis
                                              Chief Judge
                                              United States District Court